```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

**DAVID A. MILSTED,**

        Plaintiff,

  vs.                                Civil Action 2:10-CV-468
                                       Judge Watson
                                       Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

        Defendant.

## REPORT AND RECOMMENDATION

### Introduction and Background

This is an action instituted under the provisions of 42 U.S.C. §405(g), for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 14, the Commissioner's *Memorandum in Opposition*, Doc. No. 19, and plaintiff's *Reply Memorandum*, Doc. No. 20.

Plaintiff, David A. Milsted filed his current application for benefits on September 26, 2006, alleging that he has been disabled since April 1, 1999, as a result of anxiety, depression and agoraphobia.[1] *PageID#* 156-58, 173. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge. *Page ID#* 109-10, 112-18, 121-31.

---

[1] On June 10, 1999, plaintiff filed his first application for supplemental security income benefits, which was denied initially and upon reconsideration. Following a hearing, an unfavorable decision was issued on April 26, 2002. Plaintiff did not appeal that decision. He filed a second application on January 18, 2000, which was also denied. On June 6, 2003, plaintiff filed a third application for supplemental security income. This claim was also denied initially and upon reconsideration. Following a hearing, an unfavorable decision was issued on May 25, 2006 by Administrative Law Judge Knapp, and plaintiff did not appeal that decisions. *Page ID#* 91-108.

A video hearing was held on June 2, 2009, at which plaintiff, represented by counsel, appeared and testified, as did Marilyn Sayre-Hogsett ("Case-worker Sayre-Hogsett"), a case-worker at Tri-County Mental Health and Counseling ("Tri-County"). *Page ID#* 67-86. In a decision dated June 16, 2009, the administrative law judge denied plaintiff's application. *PageID#* 56-66. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 25, 2010. *PageID#* 40-43.

Plaintiff was 35 years of age at the time the administrative law judge issued his decision. He has a high school education and no past relevant work. *PageID#* 64, 174, 177.

Plaintiff testified at the administrative hearing that he worked as a cook after graduating from high school. *Page ID#* 72. He quit that job because of problems working around people. *Id*. He testified that he also worked in a factory and made furnace filters; however, he quit that job after being placed on an assembly line. He also acknowledged problems with transportation to that job. *Page ID#* 72-73. Plaintiff testified that he started noticing problems with depression in 1999, at which time he sought treatment at Tri-County. *Page ID#* 73. He has attempted suicide on two prior occasions; however, he was not suicidal at the time of the hearing. *Id.* He has not experienced crying spells "for a while". *Page ID#* 74. He lives alone in an apartment. Although he is very socially withdrawn, he remains friendly with a neighbor and a couple of friends from high school. *Id.*

Plaintiff testified that he recently began Luvox for depression but has not yet noticed improvement in his mood. *Page ID#* 75. Other antidepressants have never helped. *Id.* He experiences panic attacks

if he is in public situations; as a consequence, he stays home. *Page ID#* 75-76. He lost his drivers license in 1994 following a conviction for DUI; however, he no longer abuses alcohol. *Id.*

Asked about his activities of daily living, plaintiff testified that he likes to read science books and suspense novels. *Page ID#* 77. He does not belong to any social organizations nor does he attend church. *Id.* He naps during the day, performs household chores and goes grocery shopping once a month. *Page ID#* 78.

Ms. Sayre-Hogsett, plaintiff's case worker with Tri-County,[2] testified that she has been plaintiff's primary service provider since August 2003. *Page ID#* 82-83. According to Ms. Sayre-Hogsett, plaintiff is uncomfortable around others and frequently misses appointments. *Page ID#* 83. Her efforts to persuade plaintiff to pursue counseling were largely unsuccessful. He also avoids group activities. *Id.* However, he does keep appointments for such things as medication for his hypertension. *Page ID#* 84. Although plaintiff does his own grocery shopping, he does so later in the evening when the stores are not crowded. *Id.* Ms. Sayre-Hogsett also recounted a recent hospitalization for suicidal ideation. *Id.*

### The Medical Evidence of Record.

The record contains Tri-County treatment notes from February 16, 1999 to April 30, 2009. *Page ID#* 229-36, 256-71, 368-403. Treating psychiatrist Kent Colburn, D.O., saw plaintiff approximately every four

---

[2]Ms. Sayre-Hogsett has an associate's degree in corrections and human services and is a certified paralegal. *Page ID#* 81.

months from January 2006 through April 2009 for follow-up and medication management for panic disorder and major depressive disorder, recurrent. *Page ID#* 376-403. On June 5, 2007, plaintiff reported that he was taking walks early in the morning, that he was tolerating his medications well, that his appetite was stable, and that his sleep was "fair." *Page ID#* 392-93. On August 28, 2007, plaintiff reported that counseling was working well for him and that he had gained some insight. *Page ID#* 390-91. At the February 12, 2008 session, plaintiff reported some distress on leaving his home, although he denied panic attacks. *Page ID#* 386-87.

On May 6, 2008, Dr. Colburn opined that plaintiff "remains rather disabled by his anxiety." *Page ID#* 384-85.

On October 21, 2008, plaintiff reported to Dr. Colburn that he had been doing fairly well overall and that his mood and home situation had been stable. *Page ID#* 380-81. Plaintiff was still doing fairly well on January 6, 2009, although he was stressed as a result of moving into a new apartment. *Page ID#* 378-79. On April 24, 2009, plaintiff reported he had been doing fairly well; his only complaint was insomnia. *Page ID#* 376-77. He denied suicidal ideation and reported that he had been getting out with friends to go walking. *Id.*

In September 2006, Terry Hayes, Ph.D., performed a consultative examination of plaintiff for the Department of Job and Family Services. According to Dr. Hayes, plaintiff's mood was depressed and anxious. *Page ID#* 212. His eye contact was poor and his affect was somewhat blunted. *Id.* Plaintiff reported marked problems in concentrating, remembering and thinking clearly when around other people. *Id.* He isolated himself and

4

went out only when he could not avoid it. *Id.* His judgment was severely adversely affected by his fear of becoming anxious in public situations. Dr. Hayes diagnosed panic disorder with agoraphobia and major depressive disorder, recurrent, and assigned a Global Assessment of Functioning ("GAF")[3] score of 50.[4] *Id.* Dr. Hayes opined that in twenty areas of functioning, plaintiff was not significantly limited in three areas, was moderately limited in six areas, was markedly limited in ten areas and was extremely limited in his ability to interact appropriately with the general public. *Page ID#* 210.

In December 2006, Ms. Sayre-Hogsett completed an Adult Diagnostic Assessment Update, noting that plaintiff's diagnoses included major depressive disorder, recurrent, and panic disorder with agoraphobia. *Page ID#* 369.

In January 2007, Gary S. Sarver, Ph.D., performed a consultative psychological evaluation at the request of the state agency. *Page ID#* 217-21. Dr. Sarver reported that plaintiff's mood was tense and anxious and his insight was poor. His affect was apprehensive and socially awkward, but otherwise within normal limits in terms of range and appropriateness. *Page ID#* 219. Dr. Saver diagnosed social phobia (social anxiety disorder), adjustment disorder with depression and

---

[3] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

[4] A GAF of 50 indicates "severe symptoms ... or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...." *See* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34 ("DSM-IV-TR").

anxiety, alcohol abuse (in sustained partial remission), and personality disorder with avoidant features. *Page ID#* 221. Based on plaintiff's symptoms, Dr. Sarver assigned a GAF score of 51, which suggests moderate symptomotology. *Id.* According to Dr. Sarver, plaintiff's ability to relate to others, including supervisors, was moderately limited; his ability to understand and follow simple one and two-step job instructions was minimally limited; his ability to maintain attention and perform simple, repetitive tasks was minimally limited; and his ability to manage daily work stresses was moderately limited. *Page ID#* 220-21.

Ms. Sayre-Hogsett completed a daily activities questionnaire on February 2007, reporting that plaintiff visited his family three times per week and visited friends twice per month. *Page ID#* 227. According to Ms. Sayre-Hogsett, plaintiff suffered from panic attacks, a fear of leaving his house and depression. *Id.* Plaintiff rarely went grocery shopping, and then only late in the day when there were fewer people shopping. *Page ID#* 228.

On February 12, 2007, Patricia Semmelman, Ph.D., a state agency psychologist, reviewed the record and indicated that the 2006 residual functional capacity found by Administrative Law Judge Knapp remained appropriate because there was "no decline in [plaintiff's] functioning." *Page ID#* 253. Moreover, according to Dr. Semmelman, Dr. Hayes' September 2006 evaluation was "not supported by the totality of the evidence obtained." *Id.* In April 2007, state agency psychologist Karla Voyten, Ph.D., reviewed the file and affirmed Dr. Semmelman's assessment. *Page ID#* 272.

**Administrative Decision**

In his decision, the administrative law judge found that plaintiff's severe impairments consist of recurrent major depression and panic disorder without agoraphobia. *PageID#* 58. The administrative law judge also found that plaintiff's mental impairments do not meet the "B" or "C" criteria of Listings 12.04 and 12.06. *Page ID#* 60-61.

The administrative law judge next found that plaintiff has no exertional impairments but, from a mental standpoint, cannot work in contact with members of the public, cannot have more than occasional contact with supervisors or co-workers, cannot work with over-the-shoulder supervision, and cannot work cooperatively as part of a team or work projects with co-workers. *PageID#* 61. In determining plaintiff's residual functional capacity, the administrative law judge based his findings on the May 25, 2006 administrative decision, pursuant to *Drummond v. Comm'r. of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997). Because the administrative law judge found that plaintiff's non-exertional limitations did not significantly erode the occupational base of work at the medium, light, and sedentary exertional levels, *Page ID#* 65, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *PageID#* 66.

**Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In his *Statement of Errors*, plaintiff argues that the administrative law judge erred in formulating his mental residual functional capacity. Specifically, plaintiff asserts that the administrative law judge's residual functional capacity assessment does not consider the impact of his mental impairments on plaintiff's functional ability as required by Social Security Rule 96-8p. Plaintiff also argues that, in finding that plaintiff does not suffer from agoraphobia, the administrative law judge improperly made his own medical determination and diagnosis.

It is significant that the administrative law judge adopted the residual functional capacity found in connection with plaintiff's

2003 application for benefits. *Page ID#* 64 ("The undersigned gives great weight to the claimant's residual functional capacity found by the prior Administrative Law Judge in a decision dated May 25, 2006.") In *Drummond*, 126 F.3d at 842, the United States Court of Appeals for the Sixth Circuit held that, absent evidence of an improvement in a claimant's condition or of other changed circumstances, a subsequent administrative law judge is bound by the residual functional capacity finding of a previous administrative law judge. *See also* Acquiescence Ruling 98-4(6):

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding of the method for arriving at the finding.

63 Fed. Reg. at 29773; 1998 WL 274052.

Therefore, pursuant to *Drummond* as well as Acquiescence Ruling 98-4(6), the administrative law judge was required to adopt the May 2006 finding as to plaintiff's residual functional capacity unless he determined that there was new and material evidence that demonstrates a change in plaintiff's condition or that there was a change in circumstances. The administrative law judge's determination that there had not been a significant change in plaintiff's condition, and that *Drummond* therefore applies, is supported by Dr. Semmelman's February 2007 opinion, *Page ID#* 253, and by Dr. Voyten's April 2007 opinion, in which Dr. Semmelman's opinion was affirmed, *Page ID#* 272. That conclusion, as well as the administrative law judge's specific findings regarding plaintiff's residual functional capacity, is also supported by Dr.

9

Sarver's January 2007 evaluation, in which he found no more than moderate functional limitations. *Page ID#* 220-21.

Furthermore, plaintiff's assertion that the administrative law judge failed to comply with Social Security Ruling 96-8p is unavailing. Ruling 96-8p requires that the administrative law judge's residual functional capacity assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Here, the administrative law judge carefully considered all the evidence in the record – including the testimony of the witnesses and the evidence relating to plaintiff's vocational history and medical and mental health treatment – to reach findings relating to plaintiff's residual functional capacity. Those findings enjoy substantial support in the record. *Page ID#* 61-64.

In short, the Court concludes that the mental residual functional capacity assessment of the administrative law judge is supported by substantial evidence. Although the residual functional capacity selected by the administrative law judge might not be the same residual functional capacity that plaintiff would have selected, the administrative law judge clearly explained his rationale, and the residual functional capacity is, without question, within the permissible "zone of choice" that the Sixth Circuit discussed in *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

Plaintiff also contends that, in finding that plaintiff suffers from a panic disorder without agoraphobia, the administrative law judge erred by making his own medical determination and diagnosis. The Court initially notes that neither a treating physician's diagnosis nor

10

the statement that a claimant is disabled is determinative of the ultimate disability determination under the Social Security Act. *See Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986); *see also* 20 C.F.R. §416.927(e)(1). Moreover, some of the evidence upon which plaintiff relies does not reflect a diagnosis that includes agoraphobia, *see e.g., Page ID#* 332 ("Anxiety/Panic Disorder"), and not every mental health expert articulated a diagnosis that expressly included agoraphobia. *See, e.g., Page ID#* 221 (Dr. Sarver's diagnosis of "Social Phobia (Social Anxiety Disorder)"). In any event, the residual functional capacity assessment, as found by the administrative law judge and for which there is substantial support in the record, reasonably accommodated the restrictions caused by plaintiff's mental impairments, regardless of the label attached to those impairments.

In sum, the Court concludes that the administrative law judge's decision applied all laws and standards governing the resolution of plaintiff's claim and that the administrative law judge's findings and conclusions enjoy substantial support in the record.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be

11

filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: July 26, 2011                    *s/Norah McCann King*
                                       Norah McCann King
                                       United States Magistrate Judge